# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

VICTOR RAY BURTON,     )
             )
    Petitioner,     )
             )
   vs.        )    Case No. 4:03CV1502MLM
             )
CHUCK DWYER,[1]      )
             )
    Respondent.    )

## MEMORANDUM AND ORDER

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Victor Ray Burton ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 11. Petitioner filed a Traverse and a Reply to Respondent's Response. Doc. 12, Doc. 15. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

## I.
## BACKGROUND

On September 28, 1999, Petitioner was charged by Information as follows: Count I, the class B felony of burglary in the first degree, in violation of Mo. Rev. Stat. § 569.160, in that on or about August 27, 1999, Petitioner knowingly entered or remained unlawfully in a building or inhabitable structure located at 620 North 9th, in Hannibal, Missouri, for the purpose of committing assault therein, and while Petitioner was in this building LaDonna Brittman, who was not a

---

[1] Petitioner is incarcerated in the Southeast Correctional Center. Chuck Dwyer is now the Superintendent of the Southeast Correctional Center, replacing Donna Cayer. Therefore, the court has substituted Chuck Dwyer for Donna Cayer pursuant to 28 U.S.C. § 2254, Rule 2(a).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

participant, was present in the building; Count II, the class A felony of assault in the first degree, in violation of Mo. Rev. Stat. § 565.050, in that on August 27, 1999, Petitioner knowingly caused serious physical injury to Willie Nicholas by stabbing him; and Count III, the class A felony of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that on or about August 27, 1999, Petitioner committed the felony of assault in the first degree by, with, and through the use of a dangerous instrument or deadly weapon. Resp. Ex. B at 6-8.

The State withdrew Count I and Petitioner pled guilty to Counts II and III, as charged. The trial court accepted Petitioner's guilty plea and sentenced him to serve a term of fifteen years for Count II and five years for Count III, with the sentences to run consecutively. Resp. Ex. B at 121. The Missouri appellate court summarized the facts as stated at Petition's plea hearing as follows:

> In the early morning hours of August 27, 1999, [Petitioner] broke and crawled through a basement window and entered the basement bedroom of Willie Nicholas ("victim"). [Petitioner] stabbed victim several times causing serious injury and then fled. Later that day, [Petitioner] turned himself into the police. He was arraigned and incarcerated in the Marion County jail.

Resp. Ex. G at 2.

Also, at Petitioner's plea hearing the prosecutor testified that if Petitioner's case went to trial the State would prove that on or about August 27, 1999, Petitioner knowingly caused serious physical injury to Willy Nicholas by stabbing him and that Petitioner committed the felony of assault in the first degree and used or was assisted or aided by the use of a dangerous instrument or deadly weapon, a knife. Resp. Ex. B at 108.

Petitioner filed a pro se post-conviction relief motion pursuant to Rule 24.035. Resp. Ex. B at 125-30. Counsel for Petitioner then filed an Amended Motion to Vacate, Set aside or Correct Judgment and Sentence. Resp. Ex. B at 149-53. The motion court denied Petitioner the relief sought in his post conviction relief motion by Order dated June 12, 2002. Resp. Ex. B at 193-94. On

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

December 8, 2003, Petitioner filed an appeal with the Missouri appellate court. Resp. Ex. D.  On

August 19, 2003, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex.

G.

Petitioner filed his § 2254 Petition on October 20, 2003, and raised the following grounds

for habeas relief:

**1.**  Petitioner's guilty plea was not voluntarily made because of mental illness
and/or change or lack of medication;

**2.**  Petitioner is innocent based on mental incompetency, responsibility, or
state of mind at the time of the commission of the crime.

Doc. 2.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254

("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's

effective date of April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the

requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.   The

Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application with respect to claims adjudicated on the merits in the state court."  Id.

at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court

adjudication resulted in a decision that:

(1) "was contrary to . . .  clearly established Federal law, as determined by
the Supreme Court of the United States," or (2) "involved an unreasonable
application of . . .  clearly established Federal Law, as determined by the
Supreme Court of the United States."  Under the "contrary to" clause, a
federal habeas court may grant the writ if the state court arrives at a
conclusion opposite to that reached by this Court on a question of law or if
the state court decides a case differently than this Court has on a set of

3

materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

5

At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. <u>Brown v. Leubbers</u>, 371 F.3d 458 (8th Cir. 2004), <u>cert. denied</u>, 123 S.Ct.1397 (Feb. 28, 2005). The court held in <u>Brown</u> that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. <u>Coleman v. Thompson</u>, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

<u>Id.</u> at 461.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murry v. Carrier, 477 US 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 298 (1995)). A habeas petitioner who wishes to have a procedurally defaulted claim considered on its merits "'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the

8

applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)).   Actual innocence is required to meet the miscarriage-of-justice exception.  See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316).  The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context.  See Dretke, 541 U.S. at 393.  In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.   In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default."  Sweet, 125 F.3d at 1152 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default.   In Reed v. Ross, 468 U.S. 1 (1984), "the Supreme Court recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." McKinnon, 921 at 833 (citing Reed, 468 U.S. at 16).  However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar.  Ziner v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).  "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient

9

performance renders the result of the direct appeal unreliable or fundamentally unfair." <u>Id.</u>  The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the <u>Strickland</u> prejudice." <u>Id.</u> at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the <u>Strickland</u> prejudice required to establish the underlying claim for ineffective assistance of counsel." <u>Id.</u>  (citing <u>United States v. Frady</u>, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court.  <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review."  <u>Clark v. Caspari</u>, 274 F.3d 507, 510 (8th Cir. 2001) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). In <u>Randolph v. Kemna</u>, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court."  The Eighth Circuit concluded, in <u>Randolph</u>, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. <u>Id.</u> at 405.

In <u>Duncan v Walker</u>, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." See e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As the issue which Petitioner raises in Ground 1 of his § 2254 Petition is the same issue which he raised before the Missouri appellate court, the court finds that Petitioner has not procedurally defaulted this issue. Petitioner, however, did not raise the issue of Ground 2 in the appeal of his State post-conviction relief motion. As such, the court finds that he has procedurally defaulted this claim.

Petitioner has not stated a basis upon which his procedural default of Ground 2 should be excused although he alleges his innocence as the basis for habeas relief in Ground 2. In support of his claim of innocence Petitioner contends that his state of mind or competency at the time he committed the crime precluded his being found guilty. This bare, conclusory assertion that he is innocent is insufficient to excuse Petitioner's procedural default. See Sweet, 125 F.3d at 1152. Moreover, a "credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence.'" Pitts v. Norris, 85 F.3d 348, 350 (8th Cir. 1996) (quoting Schlup, 513 U.S. at 323). The court in Pitts, 85 F.3d at 351, noted that examples of factual innocence "'include credible declarations of guilt by another,'" (quoting Sawyer v. Whitley, 505 U.S. 333. 340 (1992), "'trustworthy eyewitness accounts,'" (quoting Schlup, 513 U.S. at 298) and "'exculpatory scientific evidence.'" Petitioner in the matter under consideration does not allege factual innocence but rather innocence as a result of his mental state at the time he committed the crime. Upon making this assertion of innocence he relies on information in his criminal file and plea transcript which information is not new or newly discovered. Doc. 2. As such, the court finds that Petitioner has not established innocence to excuse his procedural default of Ground 2. See Sweet, 125 F.3d at 1152; Pitts, 85 F.3d at 351. The court finds, therefore, that Petitioner's Ground 2 is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

procedurally defaulted and that it should be dismissed.[2]  Additionally, the court finds that Petitioner's

§ 2254 is timely filed and that he has exhausted his State remedies.

# V.
## DISCUSSION

Petitioner alleges in Ground 1 that his guilty plea was not entered voluntarily and that,

therefore, his constitutional rights were violated. He contends that he could not make an informed

decision to plead guilty or go to trial because of mental illness and/or change or lack of medications.

Petitioner further contends that he was denied available evidence to prove by expert testimony how

his being taken off medications affected his competency to plead guilty.   Upon addressing this issue

and Petitioner's arguments the State appellate court held:

> A few days [after Petitioner was arraigned and incarcerated] Dr. Kruse, who
> provided medical services to the jail diagnosed movant with paranoid schizophrenia
> and clinical depression.  For most of the remainder of his incarceration, Dr. Kruse
> treated movant with various types and does of psychotrophic medications, including
> Proloxin, Elavlil, Xanax, and Prozac.  After receiving medication, his symptoms of
> auditory hallucinations and paranoid delusions first decreased in frequency and
> intensity and then stopped.
>
> Shortly after being incarcerated, movant filed notice of his intent to rely on the
> defense of mental disease or defect. The trial court ordered the Director of the
> Department of Mental Health to conduct a mental examination and to report the
> results.  After conducting the examination on December 9, 1999, Dr. Jhansirani
> Vasireddy diagnosed movant with alcohol dependence, anti-social personalty disorder,
> and probable alcohol-induced psychotic disorder with hallucinations.  Dr. Vasireddy
> also opined that movant had the capacity to understand the proceedings against him

---

[2]      Even assuming, arguendo, that Petitioner did not procedurally default his
allegation in Ground 2 that he should be granted habeas relief because he is actually innocent, the
court notes that "[c]laims of actual innocence based on newly discovered evidence have never
been held to state a ground for federal habeas relief absent an independent constitutional violation
occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400
(1993) (citing Townsend v. Sain, 372 U.S. 293(1963)). Petitioner does not even contend that his
claim of innocence is based on newly discovered evidence, as stated above.  Thus, alternatively
considering the issue raised in Petitioner's Ground 2, the court find that Ground 2 should be
dismissed as it is not cognizable pursuant to a § 2254 petition.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and to assist in his own defense and knew and appreciated the nature, quality, and wrongfulness of his conduct at the time of the offense.

Movant hired a clinical psychologist, Dr. Robert L. Smith, to conduct a second mental examination, which occurred on September 25, 2000. Dr. Smith diagnosed movant with alcohol and cocaine dependence, paranoid schizophrenia, and dysthymia. He opined that, at the time of his offense, movant suffered from a disabling mental disease or defect and this disease, combined with his substance abuse, significantly impaired his ability to conform his behavior to the requirements of the law. Dr. Smith also opined, however, that movant was competent to proceed.

In the fall of 2000, movant's use of psychotropic medications Proloxin, Elavil, Xanax, and Prozac was discontinued. On September 30, he quit taking Prozac. In late November 2000, he quit taking Elavil and Xanax. Finally, on December 3, he stopped taking Proloxin. The next day, December 4, 2000, movant pleaded guilty pursuant to a negotiated plea agreement to assault in the first degree and armed criminal action. During the plea hearing, plea counsel informed the trial court about movant's diagnosis and treatment for paranoid schizophrenia. Plea counsel stated he believed that movant was competent to stand trial and relayed that Dr. Smith had expressed the same opinion.

Before accepting movant's guilty plea, the court questioned him about his psychiatric condition. Movant stated that he was no longer taking medication on a regular basis and that he had not taken any drugs, alcohol, or medication before coming to court. He asserted that he understood he was pleading guilty pursuant to a plea agreement, and that he did not believe his condition could serve as a defense in this case. He further testified that he understood: 1) the nature of the charges against him; 2) the range of punishment; 3) by pleading guilty, he was confessing; and 4) by pleading guilty, he was waiving his right to trial and all the constitutional rights attached thereto. The trial court accepted movant's pleas and found each one was made knowingly, intelligently, and voluntarily. The court then sentenced movant ...

In his sole point relied on, movant argues the motion court clearly erred in denying his Rule 24.035 motion because the record as a whole supports his claim that he lacked competence to knowingly and voluntarily plead guilty. He asserts that as a result of being weaned off his psychotrophic medications, at the time of his plea hearing he was suffering from a mental disease and could not make an informed rational decision.

Due process requires that a person who stands trial or wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily. State v. Shafer, 969 S.W.2d 719, 731 (Mo. banc 1998). An accused is competent to stand trial or plead guilty if he can rationally consult with counsel and the court and understands the proceedings against him. State v. Hunter, 840 S.W.2d 850, 863 (Mo. banc 1992). The post-conviction court was entitled to believe all, part, or none of the evidence presented at the post-conviction hearing. Id.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

We find no clear error in the motion court's conclusion that movant failed to meet his burden of proving he was incompetent to voluntarily and knowingly plead guilty. Movant did present evidence that he had a history of paranoid schizophrenia and substance abuse and that he was able to control his illness with psychotrophic medication. However, the presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial or plead guilty.

The only additional evidence movant adduced was his own testimony. At the evidentiary hearing, he testified that the discontinuation of medication impaired his thinking and put him under a lot of stress. He did not testify that his paranoid delusions or auditory hallucinations had reemerged. Movant's testimony alone is insufficent to establish that during the plea hearing, he was unable to consult with counsel and the court or understand the proceedings against him In fact, movant presented no evidence that, even at its worst, his schizophrenia ever prevented him from being competent enough to plead guilty knowingly and voluntarily.

To the contrary, two different mental health experts examined movant. Both experts, one in writing and one in conversation with movant's attorney, opined that movant was competent to stand trial. In addition, defense counsel testified that he observed marked improvement in movant's mental state over the time he represented him. Initially, movant's speech and reasoning were very erratic, unfocused, and disjointed. Towards the end of his representation, however, movant's conversations were rational, goal-oriented and directed and he appeared to be able to focus on upcoming events and rationally discuss past events. Defense counsel further testified that when he met with movant the day of or a few days before the plea hearing, he saw no evidence of movant's earlier problems.

Finally, the motion court had the advantage of personally observing movant at the plea hearing. There, after being informed of movant's mental illness, the court questioned movant about his ability to understand the proceedings and to assist his attorney. The trial court then found movant entered his guilty pleas knowingly, intelligently, and voluntarily. Point denied.

Resp. Ex. G at 2-6.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in

Petitioner's Ground 1. In regard to a defendant's entering a guilty plea, the United States Supreme

Court held in Santobello v. New York, 404 U.S. 257, 261-62 (1971), that:

[T]he sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. (citations omitted)...

       This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.

Additionally, the Supreme Court has held that:

       A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. (citation omitted). Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfied the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 387

       Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

       Several federal constitutional rights are involved in a wavier that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. (citation omitted). Second, is the right to trial by jury. (citation omitted). Third, is the right to confront one's accusers. (citation omitted). We cannot presume a waiver of these three important federal rights from a silent record.

Boykin v. Alabama, 395 U.S. 238, 243 (1969).

Thus, according to the United States Supreme Court, a record must disclose that a criminal defendant voluntarily and understandingly entered his plea of guilty. See id. at 244. For a waiver of constitutional rights given pursuant to a guilty plea to be valid under the due process clause, the "'state court [must] make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin.' (citation omitted). Consequently, if a defendant's guilty plea is not

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

equally voluntary and knowing, it has been obtained in violation of the due process clause." Id. at 243 n.5. "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Id. (citation omitted). However, "the failure of the state court to make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin does not automatically vacate the plea." Griffith v. Wyrick, 527 F.2d 109, 112 (8th Cir. 1975). As stated by the Eighth Circuit, "[t]he state may still show, by way of post-conviction proceedings, that the plea was voluntarily made." Id.

The Eighth Circuit has recently considered the requirements of Fed. R. Crim. P. Rule 11 in the context of the acceptance of a guilty plea by a State court.[3] See State of Missouri v. Turley, 443 F.2d

---

[3]        Fed. R. Crim. P. 11(b) provides, in relevant part, as follows:

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1313, 1317 (8th Cir. 1971) (citing <u>United States v. Rawlins</u>, 440 F.2d 1043 (8th Cir. 1971); <u>United States v. Woosley</u>, 440 F.2d 1280 (8th Cir. 1971); <u>United States v. Cody</u>, 438 F.2d 287 (8th Cir. 1971)).  In <u>Turly</u>, the Eighth Circuit held that:

> Rule 11 is, of course, not applicable in state proceedings. Nevertheless, once it has been established that a state court has, at the time of accepting a guilty plea, elicited sufficient information from the parties so that the propriety of accepting the plea is established in a manner analogous to the dictates of Rule 11, and an adequate record is made thereof, the occasion for setting aside a guilty plea should seldom arise. <u>United States v. Rawlins</u>, supra.  The ascertaining of such information and the recording thereof are not exercises in futility. <u>United States v. Woosley</u>, supra.

> It is worthy of note here that a minority of the Justices of the Supreme Court have indicated that in that minority's estimation, the Supreme Court has in effect fastened upon the states, as a matter of federal constitutional law, the requirements of Rule 11, Fed.R.Crim.P. <u>See</u> Mr. Justice Harlan, whom Mr. Justice Black joins, dissenting in <u>Boykin v. Alabama</u>, 395 U.S. 238, 245, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It appears from the majority opinion in <u>Boykin</u> that an on the record examination conducted by the trial court accepting a guilty plea which includes, *inter alia*, an attempt by that Court to satisfy itself that the defendant understands the nature of the charges, his right to trial by jury, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences is sufficient to insulate the plea from subsequent attack in collateral proceedings. <u>See</u> <u>Boykin v. Alabama</u>, supra, at 244, note 7, 89 S.Ct. 1709.

---

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty; ...

(2) Ensuring That a Plea Is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

443 F.2d at 1317.

In <u>Godinez v. Moran</u>, 509 U.S. 389, 399 (1993), the United States Supreme Court explained that the standard applicable to establish competency to stand trial is the same as the standard applicable to establish competency to plead guilty. Therefore, to be competent to plead guilty a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." <u>See</u> <u>Dusky v. United States</u>, 362 U.S. 402 (1960). Moreover, the "'[p]resence of a mental illness does not equate with incompetency to stand trial.'" <u>United States v. Cook</u>, 356 F.3d 913, 918 (8th Cir. 2004) (quoting <u>Feguer v. United States</u>, 302 F.2d 214, 236 (8th Cir.1962)).

The court first notes that review of the transcript of Petitioner's guilty plea hearing evidences that the trial court questioned Petitioner in a manner consistent with the dictates of Fed. R. Crim. P. 11. The trial court established that there was a *factual basis* for Petitioner's plea. The trial court then questioned Petitioner about his psychiatric condition and Petitioner stated that he had not taken any drugs, alcohol, or medication before coming to court; that he understood he was pleading guilty pursuant to a plea agreement; that he did not believe his mental condition could serve as a defense in this case; that he *understood the charges* against him; that he *understood the range of punishment* for those charges; that he *understood* that by pleading guilty, *he was confessing*; and that he *understood* that by pleading guilty, *he was waiving his right to trial* and all the *constitutional rights* attached thereto. Further, as required by Rule 11, the trial court found that Petitioner was entering his guilty pleas knowingly, intelligently, and voluntarily.

Upon considering the issue raised in Petitioner's Ground 1, the Missouri appellate court considered that Petitioner had two mental evaluations and that both evaluators determined that he was

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

competent to stand trial. The Missouri appellate court further considered the testimony of Petitioner's defense counsel that Petitioner was goal-oriented, directed, and able to focus and rationally discuss past events. The Missouri appellate court also considered the motion court's questioning of Petitioner at the evidentiary hearing. Upon considering whether Petitioner's guilty plea was voluntary, consistent with <u>Cook</u>, 356 F.3d 913, 918, the Missouri appellate court considered the presence of Petitioner's mental illness or need for psychiatric treatment did not equate with incompetency. The court finds, therefore, that the decision of the Missouri appellate court denying Petitioner post conviction relief on the issue raised in Ground 1 of his § 2254 Petition is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Santebello</u>, 404 U.S. at 261-62; <u>Boykin</u>, 395 U.S. at 243;<u>Turley</u>, 443 F.3d at 1317. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court further finds that the issue raised in Petitioner's Ground 1 is without merit and that it should be dismissed.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Ground 1 in Petitioner's § 2254 Petition is without merit. The court further finds that Petitioner has procedurally defaulted the issue raised in Ground 2 and, alternatively, that this issue is not cognizable pursuant to his § 2254 Petition. As such, the court finds that Petitioner's § 2254 petition for habeas relief is denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. <u>See</u> <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirety; [ Doc. 2]

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 8th day of July, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com